UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLTON RAY CALLINS,<br><br>Plaintiff,<br><br>v.<br><br>C. MASON, et al.,<br><br>Defendants. | Case No. 1:22-cv-00603-SAB (PC)<br><br>SECOND SCREENING ORDER GRANTING PLAINTIFF LEAVE TO FILE A SECOND AMENDED COMPLAINT OR NOTIFY THE COURT OF INTENT TO PROCEED ON CLAIMS FOUND TO BE COGNIZABLE<br><br>(ECF No. 14) |

Plaintiff Carlton Ray Callins is proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

Currently before the Court is Plaintiff's first amended complaint, filed September 21, 2022.

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); see also 28 U.S.C. § 1915A(b).

1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding *pro se* in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## COMPLAINT ALLEGATIONS

The Court accepts Plaintiff's allegations in the complaint as true *only* for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.

From September 24, 2015 to December 18, 2015, Plaintiff was sexually harassed and assaulted by officer Kyt while he was going to and from his housing unit to school. Plaintiff never had a problem with any other officers during the pat-down searches. Officer C. Kyt would place his penis on Plaintiff's buttocks area and roughly grab his breast area. No other officers on Delta Yard would do this type of search. The actions by officer Kyt made Plaintiff feel embarrassed, humiliated and degraded. Whenever Plaintiff would try to tell officer Kyt something about his conduct, Kyt would make a joke a tell Plaintiff to shut up as he could do whatever he wanted and if Plaintiff continued to talk he would put him in a holding cage and

1  subject him to a search in front of a female officer.

2  When Plaintiff would return to his housing unit, he told officers C. Zamora and D.
3  Garrison about Kyt's conduct.  Plaintiff would also request to speak with sergeants C. Manson
4  and A. Flores.  Both Zamora and Garrison would just tell Plaintiff to lock it up in his cell and the
5  sergeants were too busy to deal with Plaintiff's drama.

6  Plaintiff would try to stop sergeants Manson and Flores on his way to school, but they
7  would tell him to talk to the building officers about any issues.  However, Plaintiff advised the
8  sergeants that he already tried to talk to building officers Garrison and Zamora to no avail.  After
9  numerous attempts to talk to the sergeants, Plaintiff's cell was destroyed by officer Kyt on
10 December 23, 2015 during a search.  Approximately twenty minutes after the search, officer Kyt
11 went to deliver legal mail and threatened to physically assault Plaintiff.  Kyt later returned to
12 Plaintiff's cell with sergeant Manson and was told to cuff and then escorted to administrative
13 segregation and issued a false accusation of threatening a peace officer.

14 On December 28, 2015, while in administrative segregation and he talked with his
15 clinician about the sexual harassment and assault.  Plaintiff stayed in administrative segregation
16 until he went to his classification committee hearing on January 7, 2016.  During this hearing,
17 Plaintiff notified warden Christian Pfeiffer about the sexual assaults.  Plaintiff also informed the
18 warden about his attempts to talk to officers and sergeants about the assaults.  Warden Pfeiffer
19 just laughed and said "he doesn't care what happen maybe I should learn how to either suck dick
20 or fight better and I should learn how to respect his correctional officer's better and not threaten
21 them."  He also stated "that faggots need to learns [sic] their place in the world and that they
22 really don't belong in prison."  Plaintiff also told warden Pfeiffer that he did not want to return to
23 Delay Yard.  Plaintiff attempted suicide three times during January 2, 2016 and February 22,
24 2016.

25 On the morning of February 24, 2016, Plaintiff went to his mental health committee
26 review and captain Kevin Hixon went to Plaintiff's cell and told him "he doesn't care how many
27 fights I get into, how many times I fake an suicide attempt I am not leaving the Delay Yard
28 Facility as long as he is the captain there."  Hixon also told Plaintiff that if he attempted to

3

assault one of his officers he would personally make sure that Plaintiff was transferred to California Correctional Institution in Tehachapi and his stay would be miserable.

**IV.**

**DISCUSSION**

**A.     Official Capacity Suits**

Plaintiff contends that he is suing each Defendant in their official and individual capacities. The 11th Amendment bars § 1983 suits against a State unless the state has waived its sovereign immunity. Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989). A suit against a state official in his or her official capacity is treated as a suit against the State and is barred by the 11th Amendment. Id. at 71. However, suits against state officials in their official capacities seeking injunctive relief are not treated as against the State and thus are not barred. Id. at 71 n.10.

On the other hand, "[c]learly, under § 1983, a plaintiff may sue a state officer in his individual for alleged wrongs committed by the officer in his official capacity." Price v. Akaka, 928 F.2d 824, 828-29 (9th Cir. 1990) (emphasis added). Thus, to determine whether a § 1983 suit for damages against a state official is barred by the 11th Amendment, a court must determine whether the plaintiff has sued the official in his or her official or individual capacity. In making that determination, the court looks to the basis of the claims asserted and the nature of relief sought, and not just the label applied by plaintiff. Id.; see also Shoshone-Bannock Tribes v. Fish & Game Comm'n, 42 F.3d 1278, 1284 (9th Cir. 1994). A plaintiff's claim for damages against a defendant indicates that the defendant has been sued in his or her individual capacity. Price, 928 F.2d at 828.

Here, Plaintiff seeks only monetary damages from Defendants. Because the state has not consented to the suit, Plaintiff's claims against Defendant in their official capacities seeking money damages are barred by the 11th Amendment and must be dismissed. Accordingly, Plaintiff can only proceed against Defendants in their individual capacities.

**B.     Sexual Assault**

Individuals in prison have a constitutional right under the Eighth Amendment to be free from sexual harassment or abuse. Wood v. Beauclair, 692 F.3d 1041, 1046 (9th Cir. 2012). To

state a cognizable sexual assault claim, a plaintiff must plead facts indicating that "a prison staff member, acting under color of law and without legitimate penological justification, touched [him] in a sexual manner or otherwise engaged in sexual conduct for the staff member's own sexual gratification, or for the purpose of humiliating, degrading or demeaning the prisoner." Bearchild v. Cobban, 947 F.3d 1130, 1144 (9th Cir. 2020).

When evaluating a prisoner's sexual assault claim against a corrections officer, courts should consider "whether 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Johnson v. Frauenheim, No. 1:18-cv-01477-AWI-BAM (PC), 2021 WL 5236498, *11 (E.D. Cal. Nov. 10, 2021) (findings and recommendations adopted by Johnson v. Frauenheim, 2021 WL 5982293 (E.D. Cal. Dec. 17, 2021)) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

Here, liberally construed, Plaintiff's factual allegations are sufficient to give rise to a claim for sexual assault against officer Kyt.

**C.     Failure to Protect**

Prison officials have a duty under the Eighth Amendment "to protect prisoners from violence at the hands of other prisoners," Farmer v. Brennan, 511 U.S. 825, 833 (1994) (citations omitted), and, by extension, correctional officers. "Omissions can violate civil rights, and 'under certain circumstances a state actor's failure to intervene renders him or her culpable under § 1983.'" Chavez v. Ill. State Police, 251 F.3d 612, 652-3 (7th Cir. 2001) (quoting Yang v. Hardin, 37 F.3d 282, 285 (7th Cir. 1994)).

To succeed on such a claim, an inmate must first demonstrate she is "incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834. Second, the inmate must show prison officials acted with deliberate indifference to that risk, which requires a subjective inquiry into a prison official's state of mind. Id. at 838-39. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk or serious harm exists, and he must also draw the inference." Id. at 837.

A prisoner may demonstrate that prison officials were aware of a specific, impending, and substantial threat to her safety "by showing that [s]he complained to prison officials about a

specific threat to [her] safety." Pope v. Shafer, 86 F.3d 90, 92 (7th Cir. 1996) (quoting McGill v. Duckworth, 944 F.2d 344, 349 (7th Cir. 1991)). The prison official may be held liable only if he knows an inmate faces a substantial risk of serious harm and "disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847. A plaintiff also "can establish exposure to a significantly serious risk of harm by showing that [s]he belongs to an identifiable group of prisoners who are frequently singled out for violent attack by other inmates." Id. at 843 (quotation omitted). "Liability may follow only if a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.' " Labatad v. Corrections Corp. of America, 714 F.3d 1155, 1160 (9th Cir. 2013) (quoting Farmer, 511 U.S. at 847).

Plaintiff's allegations that he informed Defendants Manson, Flores, Zamora and Garrison of officer Kyt's misconduct, but they failed to refuse to protect him from further assaults is sufficient to give rise to a claim for failure to protect. However, Plaintiff's allegation that he advised warden Pfeiffer of the sexual assault during his classification committee on January 7, 2016 (after the last of the alleged assault on December 18, 2015) does not give rise to a claim for relief. In addition, Plaintiff's allegations fail to demonstrate that captain Hixon had any prior knowledge of the alleged assaults and failed to act to protect Plaintiff. Plaintiff's only allegations indicate that his involvement with captain Hixon took place after the alleged assaults and involve Hixon making verbal statements against Plaintiff.[1]

///
///
///

---

[1] Allegations of name-calling, verbal abuse, or threats generally fail to state a constitutional claim under the Eighth Amendment, which prohibits cruel and unusual punishment. See Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996) ("[V]erbal harassment generally does not violate the Eighth Amendment."), opinion amended on denial of reh'g, 135 F.3d 1318 (9th Cir. 1998); see also Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987) (holding that a prisoner's allegations of threats allegedly made by guards failed to state a cause of action). Even in cases concerning "abusive language directed at [a plaintiff's] religious and ethnic background, 'verbal harassment or abuse is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.' " Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997) (quoting Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987)) (alterations omitted), abrogated on other grounds by Shakur v. Schriro, 514 F.3d 878 (9th Cir. 2008).

**D.     Supervisory Liability**

Plaintiff contends that M.D. Stasher, Deputy Director of the California Department of Corrections and Rehabilitation is legally responsible for all staff and overall operations within the department, including Kern Valley State Prison.

Supervisory liability is not an independent cause of action under § 1983, and in order to state a § 1983 claim against supervisory personnel Plaintiff must allege both an underlying constitutional violation and a connection between the supervisor's actions and the violation. See Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011) ("A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.' "), quoting Hansen v. Black, 855 F.2d 642, 646 (9th Cir. 1989). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978); Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."), citing Rizzo v. Goode, 423 U.S. 362, 370-71, 375-77 (1976).

Plaintiff fails to set forth specific allegations that Defendant Stasher was personally involved in the alleged violations or had sufficient knowledge of the alleged violations. Indeed, Plaintiff references Defendant Stasher in the caption of the complaint only and does not reference to this Defendant in the factual allegations of the first amended complaint. Accordingly, Plaintiff fails to state a cognizable claim against Defendant Stasher.

**E.     Retaliation**

"A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."

Pell v. Procunier, 417 U.S. 817, 822 (1974). It is impermissible for prison officials to retaliate against prisoners for engaging in the protected activity of filing administrative grievances, as doing so would leave them with "no viable mechanism to remedy prison injustices." Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005). The First Amendment protects against such "deliberate retaliation" by prison officials. Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989).

A prisoner suing prison officials for retaliation must prove that he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995); Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes, 408 F.3d at 567-68.

Plaintiff's contention that officer Kyt destroyed his cell, threatened him with physical arm, and issued a false disciplinary violation after he raised numerous complaints about his misconduct is sufficient to give rise to a claim for retaliation against Kyt.

### E. False Accusations

Prisoners do not have a liberty interest in being free from false accusations of misconduct. This means that the falsification of a report, even when intentional, does not alone give rise to a claim under § 1983. Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986) ("The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest."); Buckley v. Gomez, 36 F. Supp. 2d 1216, 1222 (S.D. Cal. 1997) (stating that "a prisoner does not have a constitutional right to be free from wrongfully issued disciplinary reports[ ]"). Accordingly, Plaintiff fails to state a cognizable claim for any alleged false allegations.

## IV.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that Plaintiff has stated cognizable claim against Defendant Kyt for sexual assault and retaliation, and against Defendants Manson, Flores, Zamora and Garrison for failure to protect from the sexual assault.  However, Plaintiff has failed to state any other cognizable claims.  Plaintiff will be granted one final opportunity to amend his complaint to cure the above-identified deficiencies to the extent he is able to do so in good faith or file a notice of intent to proceed on the claims found to be cognizable.  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

If Plaintiff does not wish to file a second amended complaint and he is agreeable to proceeding on only on the cognizable claims identified by the Court, he may file a notice informing the Court that he does not intend to amend and he is willing to proceed on the cognizable claims.  The Court will then recommend to the District Judge that this case only proceed on the cognizable claims for the reasons discussed above.

If Plaintiff chooses to file a second amended complaint, that complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named Defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-79.  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his second amended complaint.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey, 693 F.3d at 927.  Therefore, Plaintiff's second amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's office shall send Plaintiff a complaint form;

2. Within thirty (30) days from the date of service of this order, Plaintiff shall file either:

    a. a second amended complaint curing the deficiencies identified by the Court in this order, or

    b. a notice of his intent to proceed only on the cognizable claims identified by the Court in this order; and

3. <u>Plaintiff is warned that, if he fails to comply with this order, the Court will recommend to the District Judge that this action be dismissed for failure to prosecute and failure to obey a court order</u>.

IT IS SO ORDERED.

Dated: __**October 20, 2022**__

                                                UNITED STATES MAGISTRATE JUDGE